IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA

v.            CRIMINAL NO. 04-4 ERIE

ANTONIO M. TIRADO


RESENTENCING




Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Courtroom C, U.S. Courthouse, Erie,

Pennsylvania, on Tuesday, September 13, 2005.




APPEARANCES:
          MARSHALL J. PICCININI, Assistant United States
          Attorney, appearing on behalf of the Government.

          THOMAS W. PATTON, Assistant Federal Public

Defender, appearing on behalf of the Defendant.

Ronald J. Bench, RMR - Official Court Reporter

2

1            P R O C E E D I N G S

2

3            (Whereupon, the Resentencing proceedings began

4   at 10:00 a.m., on Tuesday, September 13, 2005, in Courtroom C.)

5

6            THE COURT:  This is the time that has been set for

7   resentencing in the case of Antonio M. Tirado.  This is another

8   resentencing in the wake of Booker.
                    ──────

9            We do have a position with respect to sentencing

10  factors that was filed by the defendant.  And I think

11  pertinently the most significant objection that is raised is

12  that the applicable guideline was inaccurately computed in

13  connection with the initial sentence.  In that the base offense

14 level of 24 was inappropriate as a result of the improper

15 inclusion by way of calculation of a previous conviction for

16 possession within intent to deliver marijuana, a state felony.

17 Do you want to address this, Mr. Patton?

18      MR. PATTON:  Yes, your Honor.  It is our position,

19 as I think we set out in some detail in the papers, that Mr.

20 Tirado received such -- his attorney completely failed to

21 subject the Commonwealth's case to any kind of meaningful

22 testing by the fact that the factual basis given for Mr.

23 Tirado's plea of guilty to the possession with intent to

24 distribute was only sufficient to support a conviction for

25 possessing with intent to distribute a small amount of

3

1 marijuana.

2      THE COURT:  May I ask you a couple questions here to

3 maybe just focus our discussion.  Under Custis, you would
                                         _____

4 concede, I presume, that Custis swung closed the collateral
                           _____

5 attack door if you're complaining about a Strickland
                                            _____

6  deficiency?

7        MR. PATTON:  Correct.

8        THE COURT:  But as I read your papers, you're

9  indicating what happened to your client at the change of plea

10  to a constructive denial of counsel, is that right?

11        MR. PATTON:  That's correct.  In a constructive

12  denial, basically, under the Cronic framework.
                  ———

13        THE COURT:  The Cronic three-prong framework.  But
                  ———

14  only one is really applicable, the lack of meaningful

15  adversarial testing, is that right?

16        MR. PATTON:  That is correct.

17        THE COURT:  Okay.  Now, let's talk about that since

18  we're on the same wavelength there.  One reads the colloquy

19  that occurred in state court and, in essence, the judge

20  after -- well, it speaks for itself, I'm not going to try to

21  read it.  But it was clear, was it not, that he understood he

22  was pleading to a felony conviction; I think the term felony is

23  used?

24        MR. PATTON:  Yes.

25        THE COURT:  All right.  What is it, and that's all I

1    know about the record, is the colloquy, I have nothing before

2    me beyond the colloquy.  What is it about the colloquy,

3    actually I might, if I do, you can correct me.  But what is it

4    about the colloquy from which I can conclude that the conduct

5    of the defense counsel was so egregious, if you will, as to

6    move it outside of Strickland and into that very narrow

   _____

7    category of constructive denial?

8         MR. PATTON:  Well, your Honor, first off, on the

9    issue of what you have from the record before you.  You do have

10   the lab report from the Pennsylvania State Police crime lab.

11        THE COURT:  2.8 grams?

12        MR. PATTON:  Correct.  Which establishes that the

13   amount of marijuana at issue was less than 30 grams, which

14   under Pennsylvania law is presumptively a small amount of

15   marijuana.

16        THE COURT:  Was it 2.8, is that right?

17        MR. PATTON:  That's correct.

18        THE COURT:  How does that state statute work, if you

19   have less than 30 grams of marijuana, then you can -- there's a

20  creature possession with intent to deliver but not to sell?

21          MR. PATTON:  Correct.

22          THE COURT:  Is that what that is?

23          MR. PATTON:  Correct.

24          THE COURT:  But does that mean if you have less than

25   30 grams, you can't be charged with possession with intent to


5


1  distribute with intent to sell?

2          MR. PATTON:  No.

3          THE COURT:  It's not mutually exclusive, is it?

4          MR. PATTON:  It is not.  If there is less than 30

5  grams of marijuana at issue, is it not sufficient for the

6  Commonwealth to simply prove that he possessed it with intent

7  to distribute, the Commonwealth would have to prove that he

8  possessed with the intent to distribute it for sale.

9          THE COURT:  But if you have more than 30 grams then,

10  is it presumptive that you intended to sell it?

11          MR. PATTON:  If there's more than 30 grams, then the

12  statute for a small amount doesn't apply.

13          THE COURT:  All right.  So, anyways, getting back to

14  my original question, what can I glean from the transcript and

15  what I know that moves this out from under Strickland?

_____

16          MR. PATTON:  You have a factual basis given for a

17  felony plea that does not set forth the elements necessary to

18  establish the felony offense, but actually establishes only a

19  violation of the small amount of marijuana statute which

20  carries a maximum of 30 days imprisonment.  And the defense

21  attorney failed to recognize that and advise his client

22  accordingly and say look, if that's the evidence the

23  Commonwealth has, they can't prove you guilty of possession

24  with intent to distribute, they can only prove you guilty of

25  possessing a small amount of marijuana for distribution but not

6

1  for sale, don't plead to the offense.

2          THE COURT:  The way they do their colloquies are a

3  little different in state court than they are here.  In

4  essence, the court there says -- "Mr. Tirado, this is the

5  Criminal Information that's been filed in your case.  It's

6  alleged that on or about December 24th of 1998 at count two,"

7  which is I presume the felony count?

8          MR. PATTON:  It is.

9          THE COURT:  "You committed the offense of possession

10  with intent to deliver as a felony when you did unlawfully,

11  feloniously and knowingly, with the intent to deliver, possess

12  marijuana, that being a Schedule I substance."  And then the

13  rest of it not being particularly pertinent.  So I'm clear on

14  this, is it your position that what is materially deficient in

15  that description is the judge should have included, for the

16  purpose of sale?

17          MR. PATTON:  Yes, he did not make sure that there

18  was a factual basis to support the charge of a felony violation

19  of possessing marijuana with intent to sell.

20          THE COURT:  But if you say a felony -- when you say

21  a felony, it would have to be synonymous with more than simply

22  possessing with intent to distribute, wouldn't it?

23          MR. PATTON:  For it to be a felony conviction, that

24  is true.  But this is, in establishing a factual basis, you

25  have to not just state what the charge is, you have to make

7

1  sure that there are actual facts that support the elements of

2  that offense.  And that wasn't done.  Simply saying it's a

3  felony, doesn't provide any facts.

4      THE COURT:  In other words, it's just saying a

5  felony, are you saying it wasn't sufficient to make it a

6  knowing and intelligent waiver?

7      MR. PATTON:  I'm saying that the Commonwealth failed

8  to present a factual basis for the plea.  Now, in this case it

9  was the judge taking the plea that did the factual basis.  But

10  it is the Commonwealth's burden to establish that there are

11  facts sufficient to support the plea.  And it's decided in

12  Pennsylvania case law --

13      THE COURT:  I'm sorry to interrupt you, but are you

14  saying if you have less than 30 grams, an element of the

15  offense, and it would appear in the information, would be for

16  the purpose of sale?

17      MR. PATTON:  Yes, it has to be.  Because that's the

18  only thing that distinguishes.  If you have less than 30 grams

19  of marijuana, possessing that marijuana with intent to

20  distribute does not in and of itself violate the felony statute

21  of possession with intent to distribute a controlled substance.

22  Because the subsection of the Controlled Substance Act -- it's

23  the Controlled Substance, Drug, Device and Cosmetic Act, I

24  believe it's (a)(31), says notwithstanding other subsections of

25  this section, if you have a small amount of marijuana and

8

1  possess it with intent to distribute, but not for sale, it's 30

2  days maximum.  So it carves out, it uses on that language of

3  notwithstanding any other section.  So yes, if you have less

4  than 30 grams of marijuana, simply saying you possessed with

5  intent to distribute does not establish the felony offense of

6  possession with intent to distribute.  Because you have to have

7  the addition that it was distribution for sale.  A criminal

8  defense attorney who is going to practice criminal law in the

9  Commonwealth of Pennsylvania has to understand that distinction

10  and understand that it's the Commonwealth, if all they have to

11  show or all the evidence establishes is that your client

12  possessed less than 30 grams of marijuana with intent to

13  distribute, that doesn't cut the felony offense.

14          THE COURT:  But how do I know that -- let me cut

15  right to the chase, it's more of a procedural question than a

16  substantive question.  Can I determine whether there has been a

17  constructive denial without an evidentiary hearing?

18      MR. PATTON:  I think you can under these

19  circumstances.  Because in this case it doesn't matter what

20  evidence the Commonwealth may have had beyond what was put in

21  the factual basis.  Because when you're looking to whether or

22  not there is a viable plea, when you have to make that

23  determination, you're limited to looking at what was the

24  factual basis put forth in the plea.  The Commonwealth can't

25  come in after the plea and say, well, we have this other

9

1  evidence that could establish that the intent to deliver was

2  for sale.

3      THE COURT:  But all you're really complaining about

4  is, I don't mean to say all, but if the judge had not said with

5  intent to deliver as a felony and had simply said intent to

6  deliver, that would be one thing.  But you're really

7  complaining about the absence of a couple of words for sale?

8      MR. PATTON:  Your Honor, those couple of words are

9  the factual evidence that the Commonwealth has to present to

10  establish that there is a factual basis for the defendant's

11  plea.  Because the plea cannot be accepted unless it is made

12  clear on the record that the Commonwealth has the evidence

13  necessary to establish the offense, regardless if the defendant

14  pleads guilty or not.

15        THE COURT:  Do I know anything about whether any

16  other charges were bargained away and dismissed, do I know

17  anything about that -- wasn't there an escape charge?

18        MR. PATTON:  There was an escape charge that was

19  dismissed.  There was a misdemeanor of possession of marijuana

20  charge that was dismissed.

21        THE COURT:  Is that in the record here, I thought I

22  read it somewhere?

23        MR. PATTON:  It's in the presentence report, it

24  lists out the offenses that Mr. Tirado was initially charged

25  with and then pled to.


10


1         THE COURT:  Isn't this the case -- not a case where

2  the bump on the log case, the lawyer is a bump on the log who

3  does nothing, something happened here, he got some charges

4  dismissed.  He pled to the bigger charge to be sure.  But he

5   said in his colloquy that he was guilty of the felony offense.

6   Sometimes you take what you can get. There was some bargaining

7   going on here, wasn't there?

8        MR. PATTON:  There was some.

9        THE COURT:  This wasn't the quintessential case

10  where like somebody falls asleep at counsel table or something,

11  something was happening?

12       MR. PATTON:  Something was happening.  But

13  dismissing a misdemeanor possession of marijuana count is

14  meaningless because that count would have, as a matter of law,

15  merged with the possession with intent to deliver.  So getting

16  that count dismissed isn't doing anything beyond saying I'm

17  pleading to the felony count.  The escape charge was dismissed.

18  And there was a resisting arrest, which was count three, which

19  was a misdemeanor, too, that was reduced to a disorderly

20  conduct, which is a misdemeanor.

21       THE COURT:  All right, I have your point on this.

22       MR. PATTON:  Even if your Honor, after Mr. Piccinini

23  speaks, before you impose sentence, I want to talk about, even

24  if you find that under the guidelines it has to be counted, I

25  want to talk about your discretion.

1          THE COURT:  I'll give you an opportunity.  After he

2    speaks, if you have some other comments you want to make on

3    this issue, I'd be happy to hear them.

4          THE COURT:  All right, Mr. Piccinini.

5          MR. PICCININI:  Thank you, your Honor.

6          THE COURT:  Now, couple of observations or

7    questions.  In your papers you try to characterize his, largely

8    his objections as one of ineffective assistance.  I don't think

9    that's really -- I think he recognizes that would be precluded

10   under Custis, you can't collaterally attack that.  So we're on

11   the same playing field, I think we are, he's really claiming

12   that the performance here was so deficient that it's a

13   constructive denial within that one prong?

14          MR. PICCININI:  I think Cronic -- that may be what

15   he claims.  But as you look at the defense's papers and as you

16   listen to the answers to the questions, they don't even get

17   past a standard of ineffectiveness under Strickland, to even

18   get to the point of Cronic, a complete failure to even have

19  counsel.  And Cronic talks somewhat about this, your Honor.

—————

20  They talk about the type of ineffectiveness that they're

21  referring to.  And in Cronic they say, this is at page 656 of

—————

22  the opinion, "when a true adversarial criminal trial has been

23  conducted, even if defense counsel may have made demonstrable

24  errors in the kind of testing envisioned by the Sixth Amendment

25  has occurred."  So even if Attorney Pitonyak, who is not a


12


1  lackluster attorney, defense counsel, who works hard for his

2  clients, even if he would have made some demonstrable error,

3  that is not the type of ineffectiveness that Cronic says can be

—————

4  deemed akin to a lack of counsel at all.

5        So the reason why my papers indicate that he is

6  precluded from raising the issue is because it's not even close

7  to that type of situation.  For some of the reasons you already

8  indicated.  One, the defendant was charged with the possession

9  of marijuana.  He was charged with possession with intent to

10  distribute marijuana, a felony.  He was charged with an escape

11   charge.  He was charged with, I believe with disorderly

12   conduct.  The possession of marijuana was dismissed.  Counsel

13   would have the court believe that even after having dismissed

14   the possession of the marijuana, that he really should have

15   been convicted of possession with a small amount.  But that

16   makes no sense.  He was already charged with possession.  In

17   the negotiations for the plea, based upon the sufficiency of

18   the evidence against Mr. Tirado, possession was dismissed.  He

19   was required by the government's proof and by the government's

20   plea agreement to plead to possession with intent to

21   distribute, which was a felony.  And in light of that, and the

22   escape charge was dismissed.  You see that not only in the

23   presentence report, but it's also in the colloquy itself at the

24   time of the change of plea.

25          The difficulty, judge, just like they say in Custis,

―――――

13

1   how difficult would it be for a sentencing court, a federal

2   court, six and a half years later to now be in a position to

3   have to re-litigate a conviction under a claim of

4   ineffectiveness on less than half facts.

5          The truth of the matter is there is no record here

6   that establishes Attorney Pitonyak's discussions with Mr.

7   Tirado.  There is no indication whatsoever as to the correct

8   facts in the case.  If Mr. Tirado claims to distribute the

9   marijuana, as opposed to sell it, why wasn't that stated

10   somewhere in here.  Maybe it wasn't stated because the truth of

11   the matter is that he intended to sell it.  And Attorney

12   Pitonyak, in reviewing the discovery materials, realized his

13   client was dead to right on the charge of possession with

14   intent to sell.  It didn't matter that it was 2.7 grams.  The

15   truth of the matter is that they had enough evidence to support

16   the charges that he was convicted of.

17          You know, even in the Cronic case and in Custis,

18   we talk about the presumption that this court should look at,

19   even when there's a claim of ineffectiveness.  And it's the

20   presumption that counsel is effective, that counsel needs to

21   work hard on behalf of his client.  There's nothing in this

22   record to support even a claim of ineffectiveness, which can't

23   be brought before you, and certainly not a claim of lack of

24   counsel all together.

25          THE COURT:  Let me ask you this.  Did the judge who

14

1    took the plea misstate the elements of the offense?

2          MR. PICCININI:  I don't believe that he misstated

3    the elements of the offense.  Because the possession with

4    intent to distribute is the crime of possession with intent to

5    distribute in the state system.  Counsel's claim is that the

6    possession of a small amount, if it's less than 30 grams, you

7    intend to distribute but not to sell, then you should fall into

8    that statute.  But the concept of distribution includes both

9    the sale and the mere handing over of the drugs.  If there was

10   an affirmative defense that yeah, I distributed but I didn't

11   sell it, then that could have been raised.  Counsel wants you

12   to presume that it wasn't raised because the former counsel was

13   ineffective.  The record that you have before you would say

14   that it wasn't raised because it wasn't a fact that the

15   government had to prove sufficient to the charge.

16          On your point about the colloquy, judge.  When

17   colloquies at the time of a plea are insufficient, it is not

18   defense counsel's ineffectiveness that is challenged for that.

19   It is the government and the court's representation of the

20  facts to support a plea.  So even if the factual colloquy was

21  incorrect, how could Attorney Pitonyak, how can the defense

22  counsel be faulted in this hearing as being ineffective.  If

23  the colloquy was insufficient, then after the plea occurs and

24  after the conviction occurs, you go up to the Superior Court

25  and you challenge the sufficiency of the colloquy.  As the


                            15


1   court is familiar, insufficient colloquies provide the basis

2   for the return of convictions on a regular basis.  Here, it

3   doesn't appear that the colloquy was insufficient.  The

4   defendant knowingly, didn't argue at all, agreed to plead in

5   exchange for withdrawal of charges, to a felony charge of

6   possession with intent to distribute.  Not of the possession of

7   a small amount of marijuana, which was an ungraded misdemeanor.

8        THE COURT:  I asked him a question that raised the

9   issue about an evidentiary hearing, I only raised it in this

10  context.  Under 2255, although this is not a 2255, but it's the

11  functional equivalent if somebody is coming back and attacking,

12  collaterally attacking on the basis of a denial of counsel,

13  even if it's not styled that way.  But under that statute

14  insofar as it relates to an evidentiary hearing, I just got

15  reversed on this.  It says you must -- and you're smiling

16  because you probably know the case, it says the court must

17  conduct an evidentiary hearing unless the facts conclusively

18  show that the defendant is entitled to no relief.  You're

19  familiar with what I'm talking about?

20       MR. PICCININI:  Sure, I'll be in court with you on

21  Friday on that case.  Your point about the need to have an

22  evidentiary hearing to flush this out, is exactly why we

23  shouldn't be having this conversation.  That this court in the

24  context of an ineffective assistance of counsel claim because

25  this is nothing more than that, should not, as the Supreme


16


1  Court and as the Third Circuit said, should not be entertaining

2  today, six and a half years later, a collateral attack upon

3  that --

4       THE COURT:  So what you're really saying is based

5  upon what I have here, there's at worst, but you don't even

6  think it is, it's ineffective assistance.  But there's no

7  evidence of a denial of counsel within the meaning of Cronic?

8          MR. PICCININI:  It can't even be.  You could claim

9    that counsel was ineffective for not properly negotiating a

10   better plea on behalf of the defendant.  But there was a plea

11   agreement.  There was a discussion, there were charges

12   dismissed and there was a defendant who knowingly pled.  And if

13   the court -- we would be entertaining these collateral

14   challenges to every prior conviction that gave rise to an

15   increased sentence, an increased sentencing guideline, and

16   Custis makes clear that that is exactly what we should not be
_____

17   doing.

18          THE COURT:  All right, I have your point, thank you.

19   Mr. Patton, do you want to come up and either address that or

20   move on to your second point?

21          MR. PATTON:  The only response I have is that it is

22   not an affirmative defense to a charge of possession with

23   intent to distribute marijuana, that it was a small amount of

24   marijuana involved, it's not an affirmative defense that the

25   defendant has to raise.  The statute itself at 35 Pa.C.S.

17

1  Section 780-113(a)(31), states "notwithstanding other

2  subsections of this section, the possession of a small amount

3  of marijuana only for personal use; the possession of a small

4  amount of marijuana with intent to distribute it but not sell

5  it; or the distribution of a small amount of marijuana but not

6  for sale.  For purposes of this section, 30 grams of marijuana

7  or less is considered a small amount of marijuana."  The

8  statute itself sets out the elements of the offense, it's not

9  an affirmative defense that Mr. Tirado or his counsel would be

10  required to raise at trial.  It's something the government has

11  to prove to establish their case.

12      THE COURT:  All right.

13      MR. PATTON:  Your Honor, even if you conclude that

14  you cannot address, that you have to count the prior conviction

15  for possession with intent to distribute in calculating the

16  guideline range, the whole reason we are back here in front of

17  you today is because of the Supreme Court's decision in Booker.

————

18  That says the guidelines are not binding on you, to treat them

19  as such violates Mr. Tirado's Sixth Amendment right to have a

20  jury decide all the elements of his offense and any facts that

21  increase his sentence.  And so you have to exercise your own

22   discretion in deciding what is the appropriate sentence.  As we

23   point out in our papers, Mr. Tirado's base offense level was

24   raised 10 levels in this case based on two convictions.  One

25   was the possession with intent to distribute, which is


18


1   indisputably 2.8 grams of marijuana.

2          THE COURT:  How much is that, can you give me some

3   sense; what does it look like?

4          MR. PATTON:  I should have followed my

5   investigator's advice and brought in a bottle of oregano and

6   tried to measure out 2.8 grams.  Your Honor, I'm not a regular

7   user of marijuana so I can't tell you how much --

8          THE COURT:  I didn't ask you with the expectation

9   that would come from personal experience.

10         MR. PATTON:  But it is a small, small amount.  I

11   mean, if you think about it, 2.8 grams, it probably weighs less

12   than the pen that you have up on your bench.  It's just an

13   incredibly small amount.  You couldn't possibly get more

14   than -- probably a couple joints from that amount.  To kind of

15   put it in perspective, the way the State of Pennsylvania treats

16   it, under their Sentencing Guidelines, which I'm putting up on

17   the document camera, they have for -- what we would basically

18   refer to as offense levels, they have five.  With one being the

19   less serious, five being the most serious.  I'll zoom in on

20   level two.  And you see under level two that -- within level

21   two they're broken down into three more categories.  One of the

22   categories, it's the most serious of level two, its possession

23   with intent to distribute 1 to 10 pounds of marijuana.  And you

24   will see that also in that level two is the simple assault,

25   that is also the other conviction Mr. Tirado has that increases

19

1   his offense level under Section 2K2.1.

2         Now, under the Pennsylvania statute, it's Annex A to

3   Title 204 of the judicial system general provisions -- 303

4   sentencing guidelines, at Section 303.11, they kind of set out

5   and describes these offense levels.  Levels one, two, three,

6   four and five.

7         Then this is what they have to say about level two.

8   "Level two provides sentence recommendations for generally

9   nonviolent offenders and those with numerous less serious prior

10  convictions, such that the standard range requires a county

11  sentence but permits both incarceration and non-confinement.

12  The standard range is defined as having upper limit of less

13  than 12 months.  And a lower limit of restorative sanctions,

14  with work release, probation and those things."  This is not an

15  offense that the Commonwealth of Pennsylvania treats as

16  seriously, for example, as if you look in a level three, it has

17  possession with intent to distribute cocaine, etc., where

18  there's less than 2.5 grams.  They treat up to 10 pounds of

19  marijuana less seriously than they treat 2.5 grams of cocaine.

20  Here we're talking about 2.8 grams of marijuana.  I mean the

21  Pennsylvania statute says that 30 grams or less is considered a

22  small amount of marijuana.  And here we're talking 2.8 grams.

23  So it is a minute amount of marijuana that is involved.

24         And I believe that that is something you can and

25  should take into consideration in exercising your Booker

_____

20

1  discretion.  And along with that you should also consider the

2  simple assault conviction in trying to put that into context as

3  we described in our papers, with the way other states deal with

4  the offense of simple assault.

5       As we set out in the papers, every other

6  jurisdiction in the Third Circuit Court of Appeals treats

7  assault, whether they call it assault or some of them call it

8  battery.  It is either a misdemeanor or a disorderly persons

9  offense in New Jersey.  That at most someone can get up to one

10  year of imprisonment.  In Delaware you can get up to one year

11  imprisonment.  In New Jersey the maximum is six months.  In the

12  Virgin Islands the maximum is 30 days.

13       Now, in surrounding states, in New York, an assault

14  is a class A misdemeanor for not more than one year.  In Ohio

15  it's a misdemeanor of the first degree, it's not more than 180

16  days.  I did some further checking this morning.  Alabama, it's

17  a Class A misdemeanor, it's not more than a year.  Alaska, is a

18  Class A misdemeanor, not more than a year.  Arizona, Class One

19  misdemeanor, six months maximum.  California, again, a

20  misdemeanor, six months.  Connecticut, it's a Class A

21  misdemeanor, not more than one year.

22       With all of those jurisdictions -- in all those

23  jurisdictions since the maximum possible penalty would be one

24  year, an assault conviction in those jurisdictions could not be

25  considered under the federal Sentencing Guidelines as a crime

21

1  of violence.  Because to be a crime of violence, the offense

2  has to carry a maximum punishment of over a year.  Pennsylvania

3  just has a very odd grading system between misdemeanors and

4  felonies.  They do not follow the common law distinction that

5  misdemeanors are offenses that allow up to one year of

6  imprisonment, a felony or anything you get more than one year.

7  And when you confine yourself to operating within the criminal

8  justice system of the Commonwealth of Pennsylvania, it's no big

9  deal.  Because it's recognized, even on their sentencing

10  guidelines, they understand that even though a simple assault

11  has a statutory maximum of two years, it's treated in the same

12  category as nonviolent offenses and generally non-serious

13  offenses.  It's only when you try and take this unique way of

14  grading simple assault and try and plug it into a framework

15  that was designed to apply nationally, with an assumption that

16  we will impose basically the common law distinction between

17  misdemeanors and felonies, that this simple assault conviction

18  in Pennsylvania results in an anomaly.  And I'm not saying it

19   wasn't anything that was done maliciously, it's simply any time

20   you try and draw up rigid guidelines that have to be applied

21   through 50 different jurisdictions, you can end up having an

22   anomaly such as this.

23          And the whole point of the guidelines, their selling

24   point and even their selling point after Booker, that you
          _____

25   should treat the presumed ranges or the ranges in the


                              22


1    guidelines as presumptively reasonable, is that well it's the

2    way we can make sure that similarly-situated defendants are

3    treated the same.  But when it comes to a defendant in

4    Pennsylvania who has a simple assault conviction, they're not

5    treated the same as people, as defendants in other parts in the

6    country in federal court, they're treated very differently.

7          If Mr. Tirado had an assault conviction for the

8    equivalent of a Pennsylvania simple assault conviction in any

9    other place in the Third Circuit, his offense level would be 20

10   under 2K2.1.  If you have this conviction out of Alabama or

11   Arkansas or Arizona, California or Connecticut, his offense

12  level would have been a 20.

13      And so now with Booker you have the discretion to

        _____

14  look at that and say okay, I understand I have to consider the

15  guidelines, but I can look past the rigid application of the

16  guidelines to say in this case are the guidelines achieving the

17  results they are supposed to be achieving.  If they are not,

18  before where you had to depart trying to see if this fit within

19  a proper departure under the guidelines, you can say I

20  understand that the whole point of the guidelines is to try and

21  get consistency in sentencings throughout the country.  Due to

22  this anomaly in Pennsylvania law on simple assault, that

23  purpose is being frustrated.  And I can exercise my discretion

24  to remove that anomaly.

25      I can assume that Mr. Piccinini may argue that,


                                23


1  well, that is kind of the way it works, he may catch a break on

2  something else under Pennsylvania law.  Well, if that is in

3  fact the case, in any particular case, the United States

4  Attorney's Office is free to bring that to your attention on a

5  case-by-case basis to say hey, judge, this particular defendant

6   is catching a break due to some anomaly in Pennsylvania law

7   that is being carried over into the federal guidelines.  And if

8   that turns out to be the case in a particular case, then that's

9   something that you can specifically address.  But simply it is

10  not an accurate response to say well, okay, he catches the bad

11  end of the deal on this one, but he probably is catching a

12  break or other defendants that have convictions in Pennsylvania

13  may be catching a break on some other issue.  And so it

14  basically all equals out in the end, you don't want to get into

15  trying to pick at details in every case, otherwise, sentencings

16  will get too complicated.

17        It's the whole point of Booker is to allow you to do
              _____

18  this.  If you can't use your discretion to tweak the guidelines

19  when you are shown that the guidelines' purposes are being

20  frustrated, then there isn't any point in having discretion.

21  And we're simply back to a situation where our judges see what

22  the guideline range is and applying it.

23        THE COURT:  All right, thank you, Mr. Patton.

24  We're going to take a brief recess.

25        (Recess from 10:30 a.m.; until 10:40 a.m.)

1       THE COURT:  Mr. Piccinini.

2       MR. PICCININI:  Your Honor, as I indicate in our

3  response to the position with respect to sentencing factors.

4  The government does not dispute in any way post Booker you have
_____

5  the discretion to impose any particular sentence.  What I would

6  disagree with is the defendant's guidance to the court that

7  before you impose sentence that you tweak the guidelines in

8  order to come up with a sentence.  I think that the procedural

9  posture here is actually would calculate a guideline that's

10  calculated within the framework of the guidelines themselves.

11  According to the rules of the guidelines as set forth.  And

12  then after having establishing the guideline range with its

13  corresponding recommendation concerning that guideline range,

14  you then decide what you're going to do and exercise your

15  discretion.

16       With regard to his claims concerning the way in

17  which the state system handles both the simple assault and the

18  possession with intent to distribute marijuana.  Counsel points

19  at the guidelines and makes it appear that look, even the state

20    treats this so leniently, gets restorative sanctions or

21    nothing.  But I think what would be more important for the

22    court to look at is the sentence that the court actually

23    imposed against Mr. Tirado in the possession with intent to

24    distribute to assess whether he took his offense seriously.

25    And what you find out is he was sentenced to one to two years

25

1    imprisonment, not restorative sanctions, not probation.  But

2    the judge who sentenced Mr. Tirado on that charge is that they

3    want the court to believe was pity and should not count for

4    anything at his sentencing, he was actually sentenced to one to

5    two years in a state correctional facility.

6        The same thing on the simple assault.  The simple

7    assault in other jurisdictions would be nothing.  What did the

8    man receive as a sentence for simple assault in the Court of

9    Common Pleas.  He received the statutory maximum penalty of 6

10   to 24 months.  The maximum was two years, he got two years,

11   judge.  So that should give you a better indication of how this

12   man was treated with regard to the seriousness of those two

13   offenses.  And I'll have additional comments once counsel is

14   done with the defendant's statements.

15        THE COURT:  All right.  This is an order.

16                    ORDER

17        Presenting pending before the court are the

18   Defendant's Position with Respect to Sentencing Factors.

19   Pertinently, the defendant contends that his guideline

20   calculation was in error in connection with his previous

21   sentence.  Essentially, the defendant argues that his prior

22   drug conviction, that is possession with intent to deliver, a

23   felony, which resulted in a base offense level of 24 under

24   Section 2K2.1(a)(2), should not have been considered, because

25   of the conduct of his attorney in connection with the change of


                          26


1   plea proceedings.  More precisely, in my view, the defendant's

2   claim is not that the attorney was ineffective, but that he

3   should be entitled to collaterally attack his prior drug

4   conviction because he was constructively denied the right to

5   counsel at his change of plea.  See United_States_v._Cronic,
                                        _____ _____ __ _____

6   466 U.S. 648.  And there may be a constructive denial of

7   counsel under the following circumstances.  The first would be

8   where the accused is denied the presence of counsel at a

9   critical stage.  The second would involve a situation where

10  counsel's conduct "entirely fails to subject the prosecution's

11  case to meaningful adversarial testing."  And the third would

12  be where counsel is placed in circumstances in which even

13  competent counsel would be unlikely to render assistance.

14  That's Bell_v._Cone, 535 U.S. 685, 122 Supreme Court 1843,
    ____ __ ____

15  (2002), at page 658.

16          In essence, the defendant here argues that the small

17  amount of marijuana possessed by him, which the record would

18  reflect was 2.8 grams, that in light of that his lawyer should

19  not have permitted him to plead to the felony charge of

20  possession with intent to deliver.  The defendant argues that

21  counsel's error in this regard was of such a magnitude that, in

22  essence, he did not subject the prosecution to the crucible of

23  adversarial testing.

24          I note that the circumstances under which a

25  constructive denial of counsel may be found are extremely rare.

27

1  As stated in Childress_v._Johnson, 103 F.3d 1221, (5th Cir.
   _____ __ _____

2  1997):

3       "Accordingly, when the defendant can establish that

4  counsel was not merely incompetent but inert, prejudice will be

5  presumed.

6       The vast majority of Sixth Amendment right to

7  counsel claims can be analyzed satisfactorily under the

8  two-pronged performance and prejudice test in Strickland.  The
                                                 _____

9  federal courts of appeal, including this one, have repeatedly

10  emphasized that constructive denial of counsel as described in

11  Cronic affords only a narrow exception to the requirement that
    _____

12  prejudice be proved.

13       A constructive denial of counsel occurs in only a

14  very narrow spectrum of cases where the circumstances leading

15  to counsel's ineffectiveness are so egregious that the

16  defendant was in effect denied any meaningful assistance at

17  all ...

18       In essence, we have consistently distinguished

19  shoddy representation from no defense at all."

20       Here, based upon my review of the record, there is

21  no evidence of the type of egregious professional failure

22  sufficient to support a constructive denial claim as that term

23  has been described and as was set forth above.  A review of the

24  plea agreement reveals that the defendant knowingly pled guilty

25  to the charge of possession with intent to distribute, which

28

1  was described as a felony charge.  It appears from the record

2  that two other charges were dropped in connection with the

3  plea.  There is a suggestion that the court who took the change

4  of plea failed to include the words for sale.  If in fact a

5  deficiency it was, it was a deficiency on the court's part.

6  There is also a suggestion here, although perhaps more implicit

7  than explicit, that by virtue of the verbiage used in

8  connection with the defendant's plea to the felony charge, that

9  as a result of deficiency in the language, the plea was not

10  knowing and voluntary.  At most, in my view, this is an

11  ineffective assistance or a Strickland claim masquerading in
                        _____

12  Custis clothing.  I conclude, therefore, that a collateral
    _____

13  attack at this time is inappropriate and I will deny it.

14         All right, I make the following findings.  The

15   offense level applicable in this case is 24.  With a criminal

16   history category of VI.  Statutory provision as to custody not

17   more than 10 years.  The guidelines 100 to 120.  Statutory

18   provision as to probation not less than one year to not more

19   than five years.  The guideline provision ineligible.

20   Statutory provision as to supervised release, not more than

21   three.  Guidelines two to three.  Statutory provision as to a

22   fine not more than $250,000.  The guidelines $10,000 to

23   $100,000.  Restitution is inapplicable under both the statutory

24   and the guideline provisions.  And a special assessment of $100

25   applies with respect to both.  Mr. Patton.


                                29


1          MR. PATTON:  Your Honor, I've already argued to you

2    as to how I believe you should exercise your discretion.  I

3    would say that I agree with Mr. Piccinini in the sense you had

4    to make the guideline findings that you made --

5          THE COURT:  I didn't take it that you were

6    suggesting the guidelines, I have to start out with the

7    guideline range and then go from there.

8          MR. PATTON:  Correct.  Mr. Tirado, obviously, has a

9    fairly lengthy criminal history.  I understand that.  Mr.

10   Piccinini talked about it at length at the first sentencing

11   hearing, I expect he'll talk about it at length here.

12          But the thing I would stress to your Honor is that

13   very criminal history has already twice been used by the

14   guidelines to place Mr. Tirado in a range of 100 to 120 months.

15   Number one, it has been used to calculate his criminal history

16   category.  Which is normal in the sentencing that we have here,

17   there is always a criminal history calculation.  But in this

18   case not only are the priors being used to establish his

19   criminal history category, the two priors that we've been

20   discussing here this morning were also used to increase his

21   offense level by 10 levels.  Taking him from what would have

22   been a 30 to 46, 47 month range, to 100 to 120 months.  So to

23   argue that he has a lengthy criminal history is, while

24   relevant, is less meaningful in this case because that fact has

25   already been used by the guidelines twice to massively increase


                          30


1    Mr. Tirado's sentence.

2          And I would just reiterate to your Honor that with

3    the simple assault conviction, there is no way the government

4    can argue that Mr. Tirado is not being treated very differently

5    than if he had the same -- been convicted of the same conduct

6    anywhere else in this federal circuit.  And you can and I would

7    submit should consider that and you should at a minimum

8    exercise your discretion to give a sentence within a range of

9    70 to 87 months, which is where Mr. Tirado would be if he only

10   had one prior conviction, either a crime of violence or a

11   controlled substance offense.

12          THE COURT:  All right.

13          MR. PATTON:  I would ask that you recommend to the

14   Bureau of Prisons that Mr. Tirado be housed at FCI McKean so he

15   can be close to his family, who are here today in support of

16   Mr. Tirado.  That will allow him to have visits with his

17   family.

18          I would suggest that he does not have any ability to

19   pay a fine and would ask your Honor to waive a fine.

20          And Mr. Tirado would like to make a statement to

21   your Honor.

22          THE COURT:  Okay.  I can check the record, I

23   probably have it in here, but what did I give on probation the

24  last time?

25       MR. PATTON:  Supervised release?


                          31


1       THE COURT:  I meant supervised release?

2       MR. PATTON:  Three years.

3       THE COURT:  All right.

4       THE DEFENDANT:  I would just like to say --

5       THE COURT:  I can't hear you, speak into that so I

6  can hear you.

7       THE DEFENDANT:  The sentence you gave me --

8       THE COURT:  I cannot hear a word you're saying to

9  me.

10       THE DEFENDANT:  I would like to serve the sentence

11  that you gave me and move on.

12       THE COURT:  All right, thank you.  Mr. Piccinini.

13       MR. PICCININI:  Thank you, your Honor.  Your Honor,

14  I recognized earlier, the government recognized earlier your

15  ability to exercise your discretion.  However, to the extent

16  that you would exercise your discretion with regard to this

17  particular defendant, the government would request that you

18  exercise your discretion in a different fashion.  That this is

19  a case, guidelines or not, that Mr. Tirado is a person who was

20  convicted after a trial in this court last year.  He deserves a

21  sentence of the statutory maximum of 10 years.  And I can count

22  on probably one hand the number of times I have been before the

23  court requesting that an individual before you receive the

24  statutory maximum.  And guidelines or not, that's the sentence

25  that he deserves, judge.  You have within your discretion a

32

1  10-year maximum that must be imposed against this defendant.

2        And I'd like to explain to the court why that is.

3  Counsel says that all of the 17 convictions have already been

4  factored into the guidelines.  Technically that's correct.

5        But what's not factored into the guidelines is this

6  defendant's track history since the age of 13 with those 17

7  convictions.  I would like to on the record just go through

8  that.  Because I think it screams out to the court that this

9  man needs to be taken off the street.  Because if he's not

10  taken off the street, other individuals and society in general

11  will be victimized.

12          He started his criminal history at the age of 13 by

13    striking his principal.  Then after being place in Vision Quest

14    to rehabilitate him, he absconded.  He then moved on to

15    slipping a lock on an apartment, and entered the apartment that

16    was not his.  He then attacked a victim.  You know kids at 13

17    they throw snowballs, this defendant at age 13 not only threw

18    snowballs, then he pulls over and gets out of the car, he and

19    his buddies then attacked the victim and pummeled her with

20    additional ones.

21          The defendant then gets into a stream of thefts at

22    the age of 14.  Thefts of a walkie-talkie.  Thefts of

23    necklaces.

24          Moves on to the age of 15, stealing cars.  Stole two

25    different cars.  He fails to appear for hearings as a result of

33

1    the second stolen car.  He ends up being sent to a forestry

2    camp for an indefinite period, ends up staying there for a

3    period of four years.  Moves on to additional thefts and steals

4    a necklace.

5          Then has a series of disorderly conducts.  I think

6   are important, typically I wouldn't care, I would say

7   disorderly conduct, no big deal.  But when Mr. Tirado committed

8   these disorderly conducts, they were almost all in the context

9   of police officers, that he acted out violently against them

10  when they attempted to make an arrest.

11         At the age of 18 disorderly conduct, he fled from

12  the police.  When he was apprehended, he lied and gave two

13  different identities.  He's then convicted of indirect criminal

14  contempt.  He then attacks another victim and cold-cocks the

15  victim, punches him in the face while he's standing pumping gas

16  in a gas station.  He's then sentenced to a sentence of

17  intermediate punishment.  And a little bit of leniency the

18  court previously provided to him and he messes up on that, the

19  intermediate punishment has to be revoked.  He is then

20  sentenced to the statutory maximum of 6 to 24 months.

21         At the age of 19 another disorderly conduct.  A

22  traffic stop was being attempted against the defendant.  He was

23  driving without a driver's license.  As the police officer not

24  only attempted to stop him, but yelling into the passenger

25  window to get him to stop, he turns and he yells "F-you, give

1  me a ticket," and continues to drive on.  The man is completely

2  incorrigible and has no respect for the law and never has.

3       Then again at the age of 19, disorderly conduct,

4  attempting to be placed under arrest, he pulls away and then

5  runs from the police officers.

6       Again, at the age of 19, he stopped and he receives

7  the conviction for the possession of intent to distribute,

8  excuse me, the possession of marijuana.

9       Then at the age of 20 criminal mischief, pled down

10  to criminal mischief after stealing an individual's cell phone.

11       Then at the age of 21 possession with intent to

12  distribute marijuana.  And was clearly not considered in the

13  guidelines what happened.  During his track history on that

14  17th conviction.  He receives a sentence of one to two years.

15  He's then paroled.  Within a month he's returned back to the

16  state prison.  He's then released again.  After being out

17  again, his parole is revoked, he serves another sentence of one

18  to two years.  He's released again and placed on probation.

19  And then he's revoked again as a result of this federal

20  conviction.

21          We're not here today, judge, because of this

22    defendant having possessed with the intent to distribute some

23    marijuana.  We discussed that a lot here.  That's not what the

24    sentence is about.

25          This man, after 17 criminal convictions, after all

35

1    of the attempts through the system that he's had, while on

2    state parole, parole officers go to his house to conduct a

3    search, they find a fully automatic, excuse me, a fully loaded

4    weapon in his possession.  He was a prohibited person and

5    should be, judge, this is not a person in whose possession guns

6    should be allowed.

7          Counsel asked the court that I can't dispute that

8    Mr. Tirado is going to be treated differently here in the State

9    of Pennsylvania.  I indicate to the court that Mr. Tirado

10    should be treated differently.  Mr. Tirado has 17 convictions,

11    are unlike a lot of people here, with some serious convictions.

12    And a lot of these are not serious, but they paint a picture

13    for this court of the defendant.  If you let him out anything

14    short of 10 years, law enforcement and the community will have

15  to deal with him.  He has proven to this court since the age of

16  13 all the way to today, that this is a defendant who needs to

17  remain incarcerated.

18        And at the last sentencing, after the court imposed

19  sentence, this is a man who stood up in court, turned to myself

20  and to law enforcement officers in the room, pointed at us and

21  let us know that he'd be back.  Well, he is back, he shouldn't

22  be back again, judge, he should go to jail for 10 years.  And

23  in 10 years he should serve supervised release and hopefully

24  spend those 10 years maturing and recognizing the need to

25  comply with the law.  That's all I have.


36


1        MR. PATTON:  Your Honor, if I could.  I apologize

2  for doing this out of order.  Mr. Tirado's brother would like

3  to make a statement.

4        THE COURT:  That's all right, I have no problem with

5  that, let's do that right now.  Mr. Tirado, come up to the

6  microphone.  Give me your full name, please?

7        MR. SAMUEL TIRADO:  My name is Samuel Tirado.

8        THE COURT:  Raise your right hand.

9        SAMUEL TIRADO, DEFENSE WITNESS, SWORN

10        MR. SAMUEL TIRADO:  I'm here to speak on my

11   brother's behalf.  See my brother he's the only person I got in

12   my life.  All the stuff that he's saying, makes him look like a

13   bad person and maniac.  I was listening as he was going down

14   the line.  Like he's throwing snowballs at the playground.

15   We'll just to make that comment, that was me, Samuel Tirado,

16   that wasn't Antonio Tirado.  Okay.  And I got charged for that.

17        What I'm trying to say is for that 2.3 grams of

18   weed, they took seven years out of my life, they took seven

19   years out of his life for 2.3 grams of weed.  Now, 10 more

20   years, that's going to be 17 years total.  My life is going

21   down hill.  Because I got nobody with me.  He's the only person

22   I got in my life.  The only person.  I was listening to all the

23   lying, I'm pretty sure you seen me shake my head out there for

24   all the stuff, he was making my brother look like a maniac.  My

25   brother has never hurt nobody.  Never.  He's never hurt anybody


37


1   in his life.  Never.  Taken 17 years out of his life that only

2   destroyed his life, that's destroyed my life and his kids'

3   life, too.

4          Every month I got to come out, I got to do what I

5   got to do, legal or illegal, do what I got to do to support my

6   kids and his kids because he's not around.  This is not only

7   hurting him, this is hurting the whole family.

8          I would like for you to consider what's going on all

9   through this courtroom right now.  Thank you, that's all I have

10  to say.

11         THE COURT:  Thank you, Mr. Tirado.  Do you have

12  anything else, Mr. Patton.

13         MR. PATTON:  No, your Honor.

14         THE COURT:  I'm going to take a brief recess.

15         (Recess from 11:02 a.m.; until 11:07 a.m.)

16         THE COURT:  In the wake of the decision by the U.S.

17  Supreme Court in United_States_v._Booker, the sentencing

18  guidelines, of course, are advisory only.  However, I am

19  obligated to consult those guidelines in determining the

20  appropriate sentence.

21         In addition to the Sentencing Guidelines under

22  Booker, I must also consider the other factors which are set

23  forth in 3553(a), which requires me to impose a sentence

24 "sufficient but not greater than necessary" to comply with the

25  purposes set forth in paragraph two.  Section 3553(a)(2),


38


1 states in relevant parts that the purposes are:

2        (A)  to reflect the seriousness of the offense, to

3 promote respect for the law, and to provide just punishment for

4 the offense;

5        (B)  to afford adequate deterrence for criminal

6 conduct;

7        (C)  to protect the public from further crimes of

8 the defendant; and

9        (D)  to provide the defendant with needed

10 educational or vocational training, medical care, or other

11 correctional treatment in the most effective manner.

12       Section 3553(a) further directs the sentencing court to

13 consider, (1) the nature and circumstances of the offense and

14 the history and characteristics of the defendant; the kinds of

15 sentences available; the need to avoid unwanted sentencing

16 disparities among the defendants with similar records who have

17 been found guilty of similar conduct; and the need to provide

18  restitution to any victims of the offense.

19      In fashioning this sentence today, I have carefully

20  considered the advisory guideline range, as well as all of the

21  other factors which I have just articulated.

22      As was true at the original sentencing, it is

23  significant in my view that this defendant stands before the

24  court with 17 prior adult and juvenile convictions.  The record

25  does reflect and a careful review of the presentence report

39

1  demonstrates in my view a complete lack of remorse on the part

2  of this defendant, as well as a pattern of contempt for

3  authorities.  Given this defendant's background, the protection

4  of the public in a case like this becomes of paramount

5  importance, as well as the factor of deterrence.

6      Would you please rise, Mr. Tirado.  In light of all

7  of those factors and after careful consideration, I see no

8  reason to deviate in any form or fashion from my previous

9  sentence.

10      Consequently, pursuant to the Sentencing Reform Act

11  of 1984, it is the judgment of the court that the defendant is

12   sentenced to precisely the same sentence that I imposed on

13   August 5, 2004.  All of those terms and conditions are

14   incorporated herein as has been fully set forth.

15          Do you understand that you have the right to appeal

16   this sentence I imposed today, but if you choose to do so, you

17   must do so within 10 days; do you understand that?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  All right, we're adjourned.

20          MR. PATTON:  Your Honor, we would ask that you

21   recommend to the Bureau of Prisons that Mr. Tirado be housed at

22   FCI McKean.

23          THE COURT:  I'm sorry, where should I recommend?

24          MR. PATTON:  FCI McKean.

25          THE COURT:  Where is he now?


                                   40


1           MR. PICCININI:  He's still serving his state

2   sentence.  That was my only question, it was clear on the

3   record that you are making today's sentence consecutive, as you

4   did back in August of 2004?

5           THE COURT:  I am.

6          MR. PICCININI:  He's actually serving that sentence

7    at SCI Greene currently.

8          THE COURT:  I did make my previous sentence

9    consecutive and this is consecutive as well.  As I said, I am

10   incorporating my previous sentence in its entirety as has been

11   fully set forth.

12         Mr. Patton, with respect to your request, yes, it is

13   my recommendation on the record to the BOP that this defendant

14   be housed at FCI McKean subsequent to the completion of his

15   state sentence.  All right, we are now adjourned.

16

17         (Whereupon, at 11:11 a.m., the Resentencing

18   proceedings were concluded.)

19

20                    - - -

21

22

23

24

25

1               C E R T I F I C A T E

                _ _ _ _ _ _ _ _ _ _

2

3

4

5       I, Ronald J. Bench, certify that the foregoing is a

6   correct transcript from the record of proceedings in the

7   above-entitled matter.

8

9

10

11

12   _____

13   Ronald J. Bench

14

15

16

17

18

19

20

21

22

23

24

25